**Marie DOMOND and Jean Domond, Plaintiffs,**

v.

**GREAT AMERICAN RECREATION, INC., and Vernon Valley Recreation Association, Inc., Defendants.**

**No. CV 96 5698 ADS.**

United States District Court, E.D. New York.

Sept. 15, 2000.

370

Gandin, Schotsky, Rappaport, Glass & Greene, LLP, Melville, NY, Michael S. Levine, of counsel, for the Plaintiff.

Wilson, Elsner, Moskowitz, Edelman & Dicker, LLP, New York, NY, Patrick D. Getaghty, of counsel, for the Defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This diversity case involves claims that Plaintiff Marie Domond sustained personal injuries allegedly caused by the Defendants negligence while the Plaintiffs were attending the Defendants amusement park in New Jersey. Presently before the Court are the Defendants' motions to vacate the default judgment previously entered against them, to dismiss the complaint for lack of personal jurisdiction, and to have the case transferred to the District of New Jersey.

### BACKGROUND

Unless otherwise indicated, the following facts are taken from the plaintiffs complaint. Because the Defendants' motion to dismiss is based upon an alleged lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the Court will also consider the various affidavits submitted by the parties on that issue. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196-98 (2d Cir.1990).

Marie Domond ("Marie") and Jean Domond ("Jean") are residents of New York State. Great American Recreation, Inc., and Vernon Valley Recreation Association, Inc., (collectively, "Great American") are New Jersey corporations. According to the complaint, Great American's principal place of business is "outside of New York," although the complaint does not specifically state where.

On August 17, 1995 the Plaintiffs paid the required admission to Action Park, an amusement park owned and operated by Great American in Vernon, New Jersey. They allege that, while on a ride called the "Aqua Skoot," Marie fell backwards and struck her head on metal rollers that make up the ride, causing her serious injuries.

On April 2, 1996, Great American filed for bankruptcy in the United States Bankruptcy Court, District of New Jersey. On November 20, 1996, The Plaintiffs commenced this action alleging negligence on behalf of Marie and a claim for loss of services by Jean. Because Great American was in bankruptcy at the time, the Plaintiffs' action was automatically stayed pursuant to 11 U.S.C. § 362.

In September, 1997, as a consequence of the bankruptcy proceeding, the Defendants were merged into a new entity known as GAR, Inc., which was formed in part to resolve existing claims against them that arose prior to the bankruptcy filing.

On December 16, 1996, United States Bankruptcy Judge Novalyn L. Winfield directed the parties to proceed to mediation on the Plaintiffs' claims. Between January 8, 1997 and July 6, 1998, the Plaintiffs made four written requests to Great American Recreation, Inc.; Skadden, Arps, Slate, Meagher, & Flom LLP, Great American's counsel; and Evanston Insurance Company to schedule the court-ordered mediation. Great American's only response to the Plaintiffs' correspondence was a settlement offer made by Michael Sangalli, the Vice President & CFO of Great American Recreation, Inc., on July 11, 1997.

On July 6, 1998 the Bankruptcy Court granted the Plaintiffs' motion to terminate the automatic stay as it related to this action. On July 15, 1998 and August 6, 1998 the Plaintiffs sent letters to Great American Recreation; its counsel; and Robert Drexel, Esq. of GAR, Inc., advising them of the pending lawsuit and demanding that the Great American file an answer. Great American nevertheless did not respond to the complaint. On November 4, 1998, this Court heard oral argument on the Plaintiffs' motion for a default judgment. Although Mr. Drexel, counsel for GAR, Inc. appeared at this time, no objection was made to the relief requested by the Plaintiffs, and on November 9, 1998 a default judgment was ordered on the issue of liability.

Great American now moves to vacate the November 9, 1998 default under Fed. R. Civ. P. 60(b) on the grounds that confusion resulting from the bankruptcy proceedings over who was to represent Great American and that there was a dispute over whether the Plaintiffs' claims were covered by insurance which caused the default. In addition, Great American argues that this Court lacks personal jurisdiction over it, and that the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) or, in the alternative, the case should be transferred to the District of New Jersey.

## I. DISCUSSION

### A. As to Personal Jurisdiction over Great American

The Court's first consideration in this case is whether personal jurisdiction exists over Great American in New York. In a 12(b)(2) motion the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999); *Kernan v. Kurz-Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir.1999), *citing Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.1996). If the court relies on pleadings and the affidavits alone, the plaintiff is only required to make a prima facie showing of jurisdiction, including an averment of facts that, if credited by the ultimate trier of fact, sufficiently establishes jurisdiction over the defendants. *See Kernan v. Kurz-Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir. 1999); *Jazini v. Nissan Motor Co. Ltd.,* 148 F.3d 181, 184 (2d Cir.1998). Moreover, the pleadings and affidavits should be construed in light most favorable to the plaintiff and all doubts resolved in its favor. *A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79-80 (2d Cir.1993).

Personal jurisdiction over a nonresident defendant in a federal diversity action is determined by the law of the forum state. *Id.; Jazini,* 148 F.3d at 183-84. As a result, the court must look to New York's personal jurisdiction statutes, N.Y.CPLR §§ 301 and 302, to determine whether the Plaintiffs have made a prima facie showing of personal jurisdiction over Great American. If the exercise of jurisdiction is appropriate under the statute, the court then must decide whether such exer-

cise comports with the requisites of due process. *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir.1997).

The Plaintiffs do not specify the particular jurisdictional theory they believe applies in this case. On the facts presented, the Court can conceive of only three possible jurisdictional bases for reaching Great American: that Great American is "doing business" in New York and subject to jurisdiction under CPLR § 301; that Great American "transacts business" in New York State under CPLR §302(a)(1) and the claims at issue arise from the business transacted in New York; or that Great American committed a tort outside New York State that causes injury within New York under CPLR § 302(a)(3).

### (i) As to Great American "doing business" under CPLR § 301

■ CPLR § 301 confers jurisdiction over a non-domiciliary defendant "on causes of action wholly unrelated to acts done in New York," when the defendant is "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in the jurisdiction." *Ball*, 902 F.2d at 198. A corporation is "doing business" in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Ugalde v. Dyncorp., Inc.*, 2000 WL 217502 at *4 (S.D.N.Y.2000), quoting *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir.1985).

■ Courts examine a number of factors when determining whether a corporation is "doing business" in New York, including: (i) whether the corporation has an office in New York; (ii) whether the corporation has solicited business in New York; (iii) whether the corporation has bank accounts or property in New York; and (iv) whether the corporation has employees in New York. *See Hoffritz*, 763 F.2d at 58. However, it is well settled in this jurisdic-

tion that "[a] defendant's solicitation of business alone cannot justify a finding of presence in New York pursuant to section 301." *Anderson v. Indiana Black Expo, Inc.*, 81 F. Supp. 2d 494, 500 (S.D.N.Y. 2000) citing *Laufer v. Ostrow*, 55 N.Y.2d 305, 310, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982).

■ The Court is not persuaded that Great American was engaged in a continuous and systematic course of doing business in New York as to warrant a finding of its presence in New York for jurisdictional purposes under CPLR § 301. The Plaintiffs have not alleged that Great American maintains any offices, bank accounts, property, or employees in New York State. The Plaintiffs allege only that Great American aggressively solicits business in New York State.

If a foreign corporation engages in substantial solicitation in New York State, courts have engaged in a "solicitation-plus" analysis for purposes of determining whether presence jurisdiction exists. *Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 918 F.2d 1039, 1044-45 (2d Cir.1990). In *Aquascutum of London v. S.S. American Champion*, 426 F.2d 205, 209-10 (2d Cir.1970) the court explained the "plus" component of the doctrine as follows:

> The New York cases on when a foreign carrier is 'doing business' in New York reveal that while the 'solicitation-plus' rule is adhered to, once solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business.' ... However, all the cases we have discovered which find personal jurisdiction under the 'solicitation-plus' rubric have involved either some financial or commercial dealings in New York.

Even assuming that Great American engages in extensive solicitation in New York, the Plaintiffs have nevertheless failed to allege any additional financial or commercial dealings in New York to satisfy the "plus" element of the "solicitation-

plus" test. The Plaintiffs' brief mentions only three facts supporting a claim of jurisdiction in New York: (i) that Great American advertises heavily in New York; (ii) that it derives substantial revenue from interstate commerce; and (iii) that it has had 2,400 personal injury claims made against it, and that "obviously, a significant number of those proofs of personal injury claim had to involve New York residents." However, neither proof that Great American attracts a interstate clientele nor a supposition that some New York residents attending the park suffer injuries is sufficient to satisfy the solicitation-plus rule. Absent a showing that Great American has some additional commercial dealings with New York over and above successfully directing solicitations towards New York residents, the Court lacks jurisdiction over it under a "doing business" theory.

Accordingly, the Court finds that it does not have general jurisdiction over the defendants pursuant to CPLR § 301.

### (ii) As to Great American "Transacting Business" Under CPLR § 302(a)(1)

CPLR 302(a)(1) confers jurisdiction over a foreign corporation that "transacts business within the state or contracts anywhere to provide goods and services in the state" if there is a "direct relationship between the cause of action and the in state conduct." *Fort Knox Music, Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir.2000); *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 153 (2d Cir.1999).

Injuries resulting from recreational activities held outside the New York State, but advertised within the state have regularly been found to bear "too remote a relationship to the advertising and contractual activity claimed to be the transaction of business in the state to warrant a conclusion that the injuries arose from the in-state activity." *Diskin v. Starck*, 538 F.Supp. 877 (E.D.N.Y.1982) (solicitation in New York by summer camp in Vermont insufficient to warrant jurisdiction in New York for injuries suffered by patrons at camp). The Plaintiffs' case falls squarely within a line of cases rejecting "transacting business" jurisdiction over out-of-state ski resorts that advertised in New York. *See Chamberlain v. Peak*, 155 A.D.2d 768, 769, 547 N.Y.S.2d 706, 707 (3d Dept.1989) (plaintiff's ski injury in Massachusetts was "too remote" from defendant's sales and promotional activities in New York); *Wisselman v. Mount Snow Ltd.*, 524 F.Supp. 78 (E.D.N.Y.1981) (no jurisdiction in ski injury case over Vermont corporation which advertised, bought materials, and sent agents into New York). Like these cases, the Plaintiffs here have not alleged any other transaction of business in New York by Great American other than mere solicitation.

■ Under these circumstances, the Court finds that Great American was not "transacting business" in New York State sufficient to create jurisdiction under CPLR § 302(a)(1).

### (iii) As to tortious act jurisdiction under CPLR § 302(a)(3)

CPLR §302(a)(3) extends jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to persons or property within the state," if the defendant engages in certain level of business activity in the state. *See Bensusan*, 126 F.3d at 28, 29; *Diskin*, 538 F.Supp. at 880.

■ The thrust of the statute is directed to the "imparting of the original injury within the State of New York and not the resultant damage, in order that jurisdiction might be effectuated." *Bramwell v. Tucker*, 107 A.D.2d 731, 733, 484 N.Y.S.2d 92 (2d Dept.1985), *quoting Kramer v. Hotel Los Monteros*, 57 A.D.2d 756, 757, 394 N.Y.S.2d 415 (1st Dept. 1977); *see also Diskin*, 538 F.Supp. at 879 (the statute's "essential predicate is that the injury giving rise to the plaintiffs' claim occur within the state."). The mere residence or domicile in New York of an injured plaintiff does not constitute injury within the state for the purpose of establishing jurisdiction

under CPLR 302(a)(3) where the injury occurred elsewhere. *Bramwell*, 107 A.D.2d at 732-33, 484 N.Y.S.2d at 93, *citing McGowan v. Smith*, 52 N.Y.2d 268, 274-75, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981) *and Fantis Foods v. Standard Importing Co.*, 49 N.Y.2d 317, 326-327, 425 N.Y.S.2d 783, 402 N.E.2d 122 (1980). As the Second Department recognized in *Bramwell*, "[t]o hold otherwise would open a veritable Pandora's box of litigation subjecting every conceivable prospective defendant involved in an accident with a New York domiciliary to defend against actions brought against them in the state of New York." *Bramwell*, 107 A.D.2d at 733, 484 N.Y.S.2d at 93.

■ Here, the Plaintiffs admit that Marie suffered her injury in New Jersey. While she continues to suffer the damages resulting from that accident at her home in New York, the locus of the injury was not in the State of New York, and thus, outside the scope of CPLR § 302(a)(3).

Accordingly, the Court finds that the Plaintiffs have failed to demonstrate any basis for asserting personal jurisdiction over Great American. While this would ordinarily be a sufficient basis to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2), the unusual posture of this case warrants additional discussion of the remainder of Great American's motion in light of the Court's lack of personal jurisdiction.

## B. As to vacating default judgment against Great American

Federal Rules of Civil Procedure 60(b) governs the granting of relief from a judgment for reasons other then clerical error. The rule provides that:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect ...; (4) the judgment is void ... or (6) any other reason justifying relief from the operation of the judgment.

Great American argues that it should be relieved from the default under Rule 60(b)(1) for "excusable neglect." It contends that there existed "great confusion with regard to the authority of [GAR, Inc.] to resolve claims such as this one...; [t]hese factors, coupled with the fact that no one seemed to be aware that there was applicable insurance coverage for plaintiffs' claim which would have prompted the notification of a carrier demonstrate that defendants' default was not willful."

■ In evaluating a motion to vacate a default judgment premised on a claim of excusable neglect, the court considers whether default was willful, whether defendant has a meritorious defense, and the level of prejudice that may occur to nondefaulting party if relief is granted. *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir.1998); *United We Stand America, Inc. v. United We Stand, America New York, Inc.*, 128 F.3d 86, 89 (2d Cir.1997). While "willful" is defined as conduct that is more than merely negligent or careless, willfulness may be inferred where a party's conduct was egregious and not adequately explained. *McNulty*, 137 F.3d at 738-39 *and cases cited therein*.

■ Here, the Court is not satisfied with Great American's explanation for its failure to act on the Plaintiffs' complaint. While Great American acknowledges that GAR, Inc. was specifically created "to resolve claims which arose prior to defendants' filing for bankruptcy, *such as plaintiffs*', through mediation," the record indicates that Great American ignored four requests by the Plaintiffs to schedule that mediation. The Court is convinced that this same lackadaisical attitude towards the instant lawsuit continued after the lifting of the automatic stay. Great American's excuse is particularly disingenuous as it claims "confusion as to who, if anyone, could represent it" in the instant lawsuit while the bankruptcy case proceeded, yet it never sought clarification from the Bankruptcy Court or anyone else on that issue.

Accordingly, the Court would deny Great American's motion to vacate the default judgment on the grounds of excusable neglect. However, because the Court has already found that it lacked personal jurisdiction over Great American at the time the default judgment was entered, it must nevertheless vacate the judgment pursuant to Fed. R. Civ. P. 60(b)(4) on the grounds that the judgment is void. *Triad Energy Corp. v. McNell,* 110 F.R.D. 382, 385 (S.D.N.Y.1986) (if the court lacks personal jurisdiction over a defendant, any judgment rendered by that court is void). When a judgment is void, the court has no discretion and must grant a motion to vacate it. *See id.* at 384; *Leab v. Streit,* 584 F.Supp. 748, 760 (S.D.N.Y. 1984).

### C. As to transfer of venue

Great American has moved in the alternative to dismissal, for a transfer of venue to the District of New Jersey pursuant to 28 U.S.C. §§ 1404 and 1406. The decision to transfer an action lies within discretion of the court. See *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir.1993); *McCulley v. Anglers Cove Condominium Association, Inc.,* 977 F.Supp. 177 (E.D.N.Y.1997) (citing *Cellutech, Inc. v. Centennial Cellular Corp.,* 871 F.Supp. 46, 50 (D.D.C.1994)).

The absence of personal jurisdiction does not frustrate the Court's power to transfer a case to a district where venue is proper. *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases ... whether the court in which it (sic) was filed had personal jurisdiction over the defendans or not."). The Second Circuit also recognizes the authority under 28 U.S.C. §§ 1404 and 1406 to transfer a case "in the interests of justice" even where personal jurisdiction is lacking and venue is improper. *Corke v. Sameiet M. S. Song of Norway,* 572 F.2d 77, 80 (2d Cir.1978); *see also Tomchuck v. Union Trust Co.,* 875 F.Supp. 242, 243 (S.D.N.Y.1995) (recognizing that a transfer of venue may be granted even in the absence of personal jurisdiction); *Troyer v. Karcagi,* 488 F.Supp. 1200, 1206-07 (S.D.N.Y.1980).

While the court clearly has the authority to transfer the case at bar, the determinative question is whether a transfer is in the interest of justice. See 28 U.S.C. §§ 1404(a); and 1406(a). A majority of courts have held that transferring an action is more appropriate than dismissal when such action will likely cause future statute of limitations problems. *See e.g., Corke,* 572 F.2d at 80. In the instant case the Court finds that the interests of justice favor transfer of the case to the District of New Jersey as the two year statute of limitations for personal injuries on the Plaintiffs' 1995 accident has long since run. See N.J. ST 2A:14-2. The Court finds no bad faith on the part of the Plaintiffs in filing their complaint in this district and recognizes that the applicable statute of limitations had run out while the case was subject to the automatic stay resulting from Great American's bankruptcy case.

Therefore, the court orders that this case be transferred to the District of New Jersey, where both venue and personal jurisdiction are proper. See 28 U.S.C. §§ 1332 and 1391.

### II. CONCLUSION

For the foregoing reasons, the Defendants' motions to vacate the default judgment are GRANTED pursuant to Fed. R. Civ. P. 60(b)(4). The Defendants' motions to transfer the case to the District of New Jersey are GRANTED. The Clerk of the Court is directed to transmit the case to the Clerk of the United States District Court for the District of New Jersey for further proceedings. The Clerk is then directed to close this case.

**SO ORDERED.**